ELEANOR C. HALLENBECK and WILLIAM W. HALLENBECK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hallenbeck v. Commissioner
Docket No. 12879-79.
United States Tax Court
T.C. Memo 1983-523; 1983 Tax Ct. Memo LEXIS 270; 46 T.C.M. (CCH) 1204; T.C.M. (RIA) 83523; August 24, 1983. Robert A. Bergguist and Charles C. Parlin, Jr., for the petitioners. Robert J. Shilliday, Jr., for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies in petitioners' Federal gift tax: Calendar
Petitioner
Quarter Ending
Deficiency
Eleanor C. Hallenbeck
June 30, 1974
$255,712.96
William W. Hallenbeck
June 30, 1974
$255,712.96
The only issue presently before us is whether Eleanor C. Hallenbeck made a taxable gift when she executed a disclaimer of her interest in a testamentary trust.
FINDINGS OF *271 FACT Some of the facts have been stipulated and are found accordingly. Petitioners William W. Hallenbeck and Eleanor C. Hallenbeck, husband and wife, resided in Sarasota, Florida, when they filed their petition in this case. Petitioner Eleanor C. Hallenbeck (hereinafter Eleanor) timely filed her Federal gift tax return for the calendar quarter ended June 30, 1974, with the Internal Revenue Service Center, Chamblee, Georgia. Her husband, petitioner William W. Hallenbeck, elected to consent to treat the gifts made by his wife during the taxable year 1974 as having been made by both husband and wife to the extent allowed by law, and he filed his Federal gift tax return for the taxable year 1974, with the Internal Revenue Service Center, Chamblee, Georgia. Alanson B. Houghton was born on October 10, 1863, and he was the grandfather of Eleanor. Alanson b. Houghton had three daughters, Eleanor Wickham, Matilda, and Elisabeth, and two sons, Amory, and Quincy Wellington. Eleanor was born on September 12, 1932, and she is the daughter of Eleanor Wickham Houghton. Alanson B. Houghton (hereinafter sometimes referred to as decedent) died testate on September 16, 1941, a resident *272 of Steuben County, New York. His last will and testament (hereinafter referred to as the will), dated October 4, 1939, was admitted to probate there on August 27, 1942. Decedent's will established ten trusts, one of which was for the primary benefit of his daughter Elisabeth (hereinafter such trust will be referred to as Elisabeth's Trust), and the others were for the primary benefit of each of his grandchildren who survived him. Decedent's son, Amory Houghton, and nephew, Arthur A. Houghton, Jr., were named as trustees for each of the trusts created by his will. Decedent was survived by four of his children, including Amory, Eleanor Wickham, and Elisabeth, and nine grandchildren, including Eleanor. Eleanor was 9 years of age on the date of decedent's death. Under the terms of Elisabeth's Trust, which is governed by the laws of the State of New York, the income was payable to Elisabeth during her life and, upon her death, the income was payable to her issue then living, per stirpes, or if none, to decedent's (Alanson B. Houghton's) then living grandchildren (other than Sidney Cole) and to the then living issue of any deceased grandchild (other than Sidney Cole), one equal part *273 thereof to each such grandchild and one equal part thereof to the issue of each such deceased grandchild to be apportioned among such issue in equal shares per stirpes. The trust further provided that it would terminate upon the death of the youngest of decedent's issue who was living both at the time of decedent's death and Elisabeth's death (i.e., the "measuring life"), with the corpus to be distributed to Elisabeth's then living issue, or, if none, the decedent's then living grandchildren (other than Sidney Cole) and to the then living issue of any deceased grandchild (other than Sidney Cole), one equal part thereof to each such grandchild and one equal part thereof to the issue of any deceased grandchild to be apportioned among such issue in equal shares per stirpes. Sometime prior to 1957, various members of the Houghton family formed a corporation known as Houghton Estates for the purpose of supervising the operation of the several trusts which were established for their benefit. Amory Houghton and Arthur A. Houghton, the trustees of Elisabeth's Trust, were associated with Houghton Estates as "trustees." [1]
*274 During March 1957, the trustees of Elisabeth's Trust and the other nine testamentary trusts created by decedent's will petitioned the Surrogate's Court of Steuben County, New York (hereinafter referred to as the Surrogate's Court), for a judicial settlement of their first intermediate accounting, covering the period from October 1, 1945 through December 31, 1954. In their petition with respect to Elisabeth's Trust, the trustees described Eleanor's remainder interests in such trust as follows: Name
Nature of Interest
Eleanor
(1) granddaughter of Alanson B. Houghton, * * * and (3) contingent income
beneficiary and contingent remainderman
of (a) trust under Article Nineteenth,
Paragraph I [i.e., Elisabeth's Trust] * * *.
On April 4, 1957, the Surrogate of Steuben County (hereinafter referred to as the Surrogate) issued a citation (hereinafter referred to as Elisabeth's citation) to all persons who had an interest in Elisabeth's Trust. On the same date, the Surrogate also issued nine other citations with respect to each of the other nine testamentary trusts created under decedent's will. Elisabeth's citation clearly listed the names of each *275 family member having an interest in her trust, including Eleanor's, and provided, in pertinent part, as follows: and to all persons interested in the trust for the benefit of Elisabeth Houghton under the Last Will and testament of Alanson B. Houghton, late of the City of Corning, Steuben County, New York, deceased, SEND GREEETING: Upon the petition of Amory Houghton and Arthur A. Houghton, Jr. duly verified by said Amory Houghton on February 9, 1957 and by said Arthur A. Houghton, Jr. on March 1, 1957, You and each of you are hereby cited to show cause before the Surrogate's Court of the County of Steuben in the Surrogate's Office in the Village of Bath, New York on the 21 day of October, 1957 at 10:00 o'clock in the forenoon of that date why said Surrogate's Court should not (1) finally and judicially settle and allow as filed the first intermediate account dated December 31, 1954 of petitioners as trustees of a trust for the benefit of Elisabeth Houghton under Article Nineteenth, Paragraph I of the Last Will and Testament of Alanson B. Houghton, deceased, covering both principal and income from October 1, 1945, the date of first receipt of assets by petitioners as such trustees *276 to and including December 31, 1954. On August 1, 1957, Richard C. Kimball (hereinafter Mr. Kimball), an attorney retained by the trustees of Elisabeth's Trust and the other nine testamentary trusts created under the will, personally served Elisabeth's citation and the other nine citations upon Eleanor. Elisabeth died without issue on March 2, 1974. The youngest of decedent's issue who was living at the time of Elisabeth's death and decedent's death was Laura Beer. [2] Thus, according to the terms of Elisabeth's Trust, Laura Beer's lifetime serves as the measuring life of such trust. Elisabeth was survived by eight of decedent's grandchildren (other than Sidney Cole), including Eleanor. Thus, Eleanor, upon Elisabeth's death, became entitled to receive one-eighth of the income of Elisabeth's Trust during her life; and if she survives Laura Beer (i.e., the measuring life), she would receive not less than one-eighth of the corpus of such trust. [3]
*277 On May 15, 1974, Eleanor executed a disclaimer with respect to her entire interest (i.e., income and corpus) in Elisabeth's Trust. The disclaimer was unequivocal, valid under New York law, and stated that it was effective as of March 2, 1974. On May 24, 1974, the disclaimer was delivered to the trustees of Elisabeth's Trust. At the time that Eleanor made her disclaimer, she had three children.As a consequence of her disclaimer, her children received, per stirpes, her interest in Elisabeth's Trust. [4]
On petitioners' respective United States gift tax returns for the calendar quarter ending June 30, 1974, they notified respondent of the disclaimer which Eleanor had executed with respect to her interest in Elisabeth's Trust, but neither of the petitioners reported making any taxable gifts during that quarter. In the notices of deficiency, respondent determined that Eleanor's disclaimer of her interest in Elisabeth's *278 Trust constituted a taxable gift, and determined deficiencies accordingly. [5]
OPINION We must determine whether Eleanor's disclaimer of her interest in Elisabeth's Trust, whereby such interest passed to her children, constituted a transfer of property by gift subject to the gift tax. See secs. 2501 and 2511.This is turn depends upon whether the disclaimer was executed "within a reasonable time after knowledge of the existence of the transfer." Sec. 25.2511-1(c), Gift Tax Regs. We faced this same issue in Griswold v. Commissioner, 81 T.C.     (filed Aug. 23, 1983), which involved three of Eleanor's cousins who, like Eleanor, disclaimed their interests in Elisabeth's Trust approximately *279 17 years after being personally served with Elisabeth's citation. We held therein that: (1) the "transfer" within the meaning of section 25.2511-1(c), Gift Tax Regs., occurred in 1941, when the taxpayers each received a contingent remainder interest in Alanson B. Houghton's estate; and (2) the taxpayers had "knowledge of the existence of the transfer" within the meaning of section 25.2511-1(c), Gift Tax Regs., when they were personally served with Elisabeth's citation during 1957, and, therefore, their respective disclaimers (approximately 17 years later) were not made within a reasonable time as is required under such regulation. [6] Since the facts in the instant case are identical in all relevant respects to the facts in Griswold v. Commissioner,supra, we hold herein that Eleanor made a taxable gift when she executed a disclaimer of her interest in Elisabeth's Trust. Since the value of such gift cannot be ascertained on the record before us, [7]
*280 An appropriate order will be issued.
Footnotes
1. The so-called "trustees" of Houghton Estates assumed the principal responsibility for the financial matters of the Houghton family's various trusts.↩
2. Laura Beer is the married name of Amory Houghton's daughter and decedent's granddaughter. She was born on February 13, 1938.↩
3. If Eleanor did not survive Laura Beer, her share of the corpus of Elisabeth's Trust would have passed, according to the terms of such trust, to her issue per stirpes.↩
4. Under the provisions of Elisabeth's Trust, Eleanor became entitled to a portion of the trust's income during the period between Elisabeth's death and the delivery of her disclaimer to the trustee. No income, however, was distributed to her during such period.↩
5. In the notices of deficiency separately issued to Eleanor and her husband, William W. Hallenbeck, respondent determined that Eleanor's interest in Elisabeth's Trust had a value of $1,159,573.20 as of the date of the disclaimer. The parties have stipulated and moved the Court that in the event an adverse decision is issued with respect to petitioners, each of the parties reserves the right to introduce evidence at a later time as to the value of the gift. We granted this joint motion.↩
6. We have found that Eleanor read Elisabeth's citation during 1957.While certain arguments advanced by petitioners in their original and supplemental briefs may be read to imply otherwise, we find that the record in this case does not support a finding that Eleanor failed to read Elisabeth's citation during 1957. Eleanor testified that she had no recollection of the time when she was served with Elisabeth's citation.To the extent that petitioners have argued that Eleanor did not read the citation, they have simply failed to meet their burden of proof. See Rule 142(a), Tax Court Rules of Practice and Procedure.↩
7. See note 5, supra.↩